23CA0992 Peo v Morris 11-20-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA0992
Lincoln County District Court No. 21CR36
Honorable H. Clay Hurst, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Shawn Morris,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE LIPINSKY
Dunn and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 20, 2025

Philip J. Weiser, Attorney General, John T. Lee, First Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Christina Van Wagenen,
Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Shawn Morris appeals his conviction on one count of first degree possession of contraband.  We affirm.

## I.    Background

¶ 2    A jury could have reasonably found the following facts from the evidence introduced at trial.

¶ 3    While working in the Limon correctional facility, Sergeant Damian Duran saw Morris, an inmate, retrieve an item that had been passed through a fire hose port — an opening near the lower part of a doorway.  During a strip search of Morris, Sergeant Christopher Martinez saw Morris move his hand by his sweatpants, heard a "metallic sound," and found "sharpened piece[s] of metal" (the instruments) in a nearby bucket.

¶ 4    Morris was charged with two counts of possession of contraband in the first degree in violation of section 18-8-204.1(1), (3), C.R.S. 2025.  The prosecution only proceeded to trial on one of the counts.

¶ 5    Morris's counsel argued at trial that the prosecution had failed to introduce sufficient evidence to prove beyond a reasonable doubt that Morris knowingly possessed the instruments.

¶ 6    The jury convicted Morris of the single count. The court sentenced Morris to six years in the custody of the Department of Corrections.

¶ 7    Morris presents two principal contentions in this appeal. First, he argues that the prosecution did not introduce sufficient evidence to prove that he knowingly possessed the instruments. Second, he argues that the court violated his constitutional right to due process by providing the jury with a reasonable doubt instruction (the court's instruction) that unconstitutionally lowered the prosecution's burden of proof and shifted the burden to the defense. He further asserts that the prosecutor engaged in misconduct during closing argument that compounded the instructional error.

## II.    Analysis

### A.    The Evidence Admitted at Trial Was Substantial and Sufficient to Support Morris's Conviction

¶ 8    Morris argues that the prosecution failed to prove beyond a reasonable doubt that he knowingly "possessed a dangerous weapon, as opposed to any other object." Further, Morris asserts that, because Sergeant Martinez found the instruments near

2

Morris, no witness observed the instruments "in [Morris's] hand during the strip search," and no witness saw Morris drop them, the prosecution failed to prove that Morris possessed the instruments. We disagree.

### 1. Standard of Review

¶ 9 "[W]e review the record de novo to determine whether the evidence before the jury was sufficient both in quantity and quality to sustain the conviction[]." *People v. Gray*, 2025 COA 23, ¶ 21, 568 P.3d 448, 452 (quoting *People v. Harrison*, 2020 CO 57, ¶ 31, 465 P.3d 16, 23).

¶ 10 "At trial, the prosecution has the burden of establishing a prima facie case of guilt through introduction of sufficient evidence." *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010). "We employ a substantial evidence test to determine if the evidence presented to the jury is sufficient to sustain a defendant's conviction." *Id.* The substantial evidence test considers "whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable

doubt." *Id.* (quoting *People v. Bennett*, 515 P.2d 466, 469 (Colo. 1973)).

¶ 11    The following legal principles guide our determination of the sufficiency of the evidence presented at trial:

(1)    "[I]t is for the fact finder to determine the difficult questions of witness credibility and the weight to be given to conflicting items of evidence." *People v. Kessler*, 2018 COA 60, ¶ 12, 436 P.3d 550, 554.

(2)    "[A] fact finder is not required to accept or reject a witness's testimony in its entirety; it may believe all, part, or none of a witness's testimony." *Id.*

(3)    "[A]n actor's state of mind is normally not subject to direct proof and must be inferred from his or her actions and the circumstances surrounding the occurrence." *Id.*

(4)    "[T]he prosecution must be given the benefit of every inference that may fairly be drawn from the evidence." *Id.*

(5)    "[I]f there is evidence upon which one may reasonably infer an element of the crime, the evidence is sufficient to

4

sustain that element." *Id.* (quoting *People v. Chase*, 2013 COA 27, ¶ 50, 411 P.3d 740, 752).

(6)     "[W]here reasonable minds could differ, the evidence is sufficient to sustain a conviction." *Id.* (quoting *People v. Bondurant*, 2012 COA 50, ¶ 58, 296 P.3d 200, 212).

Further, "[a] court must not invade the province of the jury by second-guessing its conclusion when the record supports the jury's findings." *People v. Perez*, 2016 CO 12, ¶ 31, 367 P.3d 695, 702.

### 2.     The Law Governing Possession of Contraband in the First Degree

¶ 12     To prove the crime of possession of contraband in the first degree, the prosecution must show that the defendant was "confined in a detention facility" and "knowingly obtain[ed] or ha[d] in the [defendant]'s possession contraband as listed in section 18-8-203(1)(a)[, C.R.S. 2025,]" that meets the definition of "a dangerous instrument." § 18-8-204.1(1), (3).  For purposes of section 18-8-204.1, a "[d]angerous instrument" includes a "knife or sharpened instrument." § 18-8-203(4).

### 3. The Evidence Introduced at Morris's Trial

¶ 13 Morris concedes that the instruments meet the definition of a "[d]angerous instrument" under section 18-8-203(4). However, he contends that the prosecution failed to prove that he knowingly possessed contraband. To support this contention, Morris argues that the "prosecution acknowledged in closing that there was no direct evidence about what Morris received in the transfer that [Sergeant] Duran observed." Thus, he argues that the jury was left to "guess at whether Morris knew the nature of what he was holding."

¶ 14 "A person acts 'knowingly' . . . with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists." § 18-1-501(6), C.R.S. 2025.

¶ 15 "[A]n actor's state of mind is normally not subject to direct proof and must be inferred from his or her actions and the circumstances surrounding the occurrence." *Kessler*, ¶ 12, 436 P.3d at 554 (citing *People v. Phillips*, 219 P.3d 798, 800 (Colo. App. 2009)). Intent may "be established from circumstantial evidence and from the inferences that may reasonably be drawn from those

circumstances." *People v. Miralda*, 981 P.2d 676, 679 (Colo. App. 1999).

¶ 16    The prosecution introduced the following evidence to prove that Morris knowingly possessed the instruments:

- When Sergeant Martinez "asked [Morris] what he got" through the fire hose port, Morris produced a pair of dice.

- While being strip-searched, Morris handed Sergeant Martinez a pill that Morris had hidden on his body.

- Later during the search, Sergeant Martinez saw Morris move his hand to the left side of his sweatpants "as if he was trying to kind of hide something."

- Sergeant Martinez turned away from Morris to tell another officer that Morris "might have something."

- While he was turned away, Sergeant Martinez heard "a metallic sound."

- Sergeant Martinez found the instruments in a mop bucket. He recognized them as items "usually . . . used for dangerous acts."

- Although Sergeant Martinez did not see Morris drop the instruments into the bucket, he saw Morris's hand "kind of in the bucket."

¶ 17    From this evidence, a reasonable juror could find that Morris obtained the instruments through the fire hose port and possessed them until he dropped them into the mop bucket. *See Bennett,* 515 P.2d at 470 (concluding that the prosecution's circumstantial evidence "was sufficient to forge a link that eventually created a chain of circumstances that established the defendant's connection to the shipment of [a] box" containing marijuana and LSD and "his possession of the illicit drugs and narcotics"); *see also People v. Poe,* 2012 COA 166, ¶ 15, 316 P.3d 13, 16 ("A finding of possession may be based on the jury's reasonable inferences from the evidence, including circumstantial evidence.").

¶ 18    The prosecution also presented evidence that Morris tried to conceal the instruments. This evidence could further persuade a reasonable juror that Morris knowingly possessed the instruments. *See People v. Summitt,* 132 P.3d 320, 324 (Colo. 2006) (Evidence of concealment "can be admissible to show consciousness of guilt."); *see also People v. McClintic,* 2020 COA 120M, ¶¶ 26-29, 484 P.3d

8

724, 729-30 (collecting cases holding that evidence showing that the defendant committed "voluntary acts of denying possession" or forgoing "an informed opportunity to relinquish possession of contraband upon entering a jail" is sufficient to support a conviction of introduction of contraband in the first degree). Thus, the jury had a substantial and sufficient basis to find Morris guilty of first degree possession of contraband.

¶ 19    In arguing that the evidence was insufficient to prove that he knowingly possessed the instruments, Morris relies on *People v. Heywood*, 2014 COA 99, 357 P.3d 201, *overruled by*, *McCoy v. People*, 2019 CO 44, 442 P.3d 379. In *Heywood*, the division reversed the defendant's judgment of conviction because, although the defendant had invited an unknown person to join a sexually explicit livestream, the evidence did not establish that the defendant knew that the unknown person was underage at the time. *Id.* at ¶ 29, 357 P.3d at 207-08. Morris argues that, like the *Heywood* defendant, he "did something that was not necessarily illegal in itself" and there was "no evidence that he had knowledge of the fact that . . . [such] conduct [was] illegal (the contraband status or dangerous nature of the object)."

¶ 20    Morris's reliance on *Heywood* is misplaced.  At his trial, the prosecution presented substantial and sufficient evidence to establish that Morris knowingly possessed the instruments.  From the prosecution's evidence, a reasonable juror could find that Morris knew that it was illegal for him to retrieve the instruments from the fire hose port.  *See Kessler*, ¶ 12, 436 P.3d at 554.  And unlike the defendant in *Heywood*, Morris was "[a] person being confined in a detention facility." § 18-8-204.1(1).  Accordingly, a reasonable juror could conclude that Morris, as an inmate in a detention facility, knew that the sharpened pieces of metal he received through the fire hose port were "[d]angerous instrument[s]," § 18-8-203(4), and, therefore, contraband.  Further, the prosecution presented evidence indicating that Morris attempted to conceal the instruments from Sergeant Martinez.  *See Summitt*, 132 P.3d at 324.

¶ 21    For these reasons, we conclude that the prosecution introduced substantial and sufficient evidence to sustain Morris's conviction for first degree possession of contraband.

### B. The Court's Instruction
### Did Not Violate Morris's Constitutional Rights

#### 1. The Court's Instruction

¶ 22 Morris contends that the court's instruction unconstitutionally lowered and shifted the burden of proof by (1) failing to inform the jury that it could base a reasonable doubt on the "lack of evidence" presented; (2) omitting the "hesitate to act" language in the 2021 model jury instructions on reasonable doubt; and (3) defining reasonable doubt as a "real possibility" that the defendant is not guilty. He also argues that the phrase "firmly convinced" in the court's instruction improperly directed the jury to consider its own assumptions and not the evidence presented at trial. Finally, Morris asserts that the cumulative effect of the errors in the court's instruction meant that the court did not correctly instruct the jury on the prosecution's burden of proof. We disagree.

#### a. Standard of Review

¶ 23 "We review de novo whether the jury instructions adequately informed the jury of the governing law." *People v. Salazar*, 2023 COA 102, ¶ 9, 542 P.3d 1209, 1213. "The district court has substantial discretion in formulating the jury instructions, so long

11

as they are correct statements of the law and fairly and adequately cover the issues presented." *People v. Nerud*, 2015 COA 27, ¶ 35, 360 P.3d 201, 207 (quoting *People v. Gallegos*, 226 P.3d 1112, 1115 (Colo. App. 2009)). "An instruction that lowers the prosecution's burden of proof below reasonable doubt constitutes structural error and requires automatic reversal." *Johnson v. People*, 2019 CO 17, ¶ 8, 436 P.3d 529, 531.

### b.    Additional Facts

¶ 24    The court patterned the court's instruction on the 2022 model jury instructions addressing the presumption of innocence, the burden of proof, and reasonable doubt (the 2022 model instructions). Defense counsel objected to the court's instruction "in its entirety" because, unlike the 2021 model instructions, the 2022 model instructions lacked the "sort of oomph of years of testing by the appellate and Supreme Court behind it" and they contained a confusing definition of "reasonable doubt." (The 2021 model instructions defined "reasonable doubt" as "a doubt which is not a vague, speculative or imaginary doubt." COLJI-Crim. E:03 (2021).)

¶ 25    The court overruled defense counsel's objection, noting that

the 2022 model instructions "lean[ed] towards [Morris's] favor as

opposed to the [prosecution's]."

¶ 26    The court's instruction said:

> Every person charged with a crime is
> presumed innocent.  This presumption of
> innocence remains with the defendant
> throughout the trial and should be given effect
> by you unless, after considering all the
> evidence, you are convinced that the defendant
> is guilty beyond a reasonable doubt.
>
> The burden of proof in this case is upon the
> prosecution.  The prosecution must prove to
> the satisfaction of the jury beyond a
> reasonable doubt the existence of each and
> every element necessary to constitute the
> crime charged.  This burden requires more
> than proof that something is highly probable,
> but it does not require proof with absolute
> certainty.
>
> Proof beyond a reasonable doubt is proof that
> leaves you firmly convinced of the defendant's
> guilt.  If you are firmly convinced of the
> defendant's guilt, then the prosecution has
> proven the crime charged beyond a reasonable
> doubt.  But if you think there is a real
> possibility that the defendant is not guilty,
> then the prosecution has failed to prove the
> crime charged beyond a reasonable doubt.
>
> After considering all the evidence, if you decide
> the prosecution has proven each of the
> elements of a crime charged beyond a

> reasonable doubt, you should find the
> defendant guilty of that crime.
>
> After considering all the evidence, if you decide
> the prosecution has failed to prove any one or
> more of the elements of a crime charged
> beyond a reasonable doubt, you should find
> the defendant not guilty of that crime.

*See* COLJI-Crim. E:03 (2022).

### c. The Court Did Not Err by Providing the Court's Instruction to the Jury

¶ 27    "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  Thus, a trial court must "properly instruct the jury on — and, as the fact finder, the jury must apply — the reasonable doubt standard." *Tibbels v. People*, 2022 CO 1, ¶ 25, 501 P.3d 792, 797.  "[A]ny jury instruction on reasonable doubt that creates 'an improper lessening of the prosecution's burden of proof' violates 'a defendant's constitutional right to due process.'" *Johnson*, ¶ 13, 436 P.3d at 532-33 (quoting *People v. Garcia*, 113 P.3d 775, 784 (Colo. 2005)).

¶ 28    "While the [reasonable doubt] standard's application is universally mandated, courts retain some flexibility in defining what

14

constitutes a reasonable doubt." *Id.* at ¶ 10, 436 P.3d at 532. Accordingly, "if the trial court properly instructed the jury on the law[,] . . . then there is no violation of due process." *Id.* at ¶ 14, 436 P.3d at 533.

¶ 29 A division of this court recently held that the 2022 model instructions on reasonable doubt did not "unconstitutionally lower the prosecution's burden of proof, violate the presumption of innocence, or shift the burden of proof to the defendant." *People v. Schlehuber*, 2025 COA 50, ¶ 2, 572 P.3d 641, 646; *see People v. Melara*, 2025 COA 48, ¶ 32, 572 P.3d 619, 628 (rejecting the defendant's contention that the "trial court denied his due process rights or otherwise reversibly erred by failing to include the 'lack of evidence' language in its reasonable doubt instruction"). Although "[w]e are not obligated to follow the precedent established by another division," we give such decisions "considerable deference." *People v. Smoots*, 2013 COA 152, ¶ 20, 396 P.3d 53, 57, *aff'd sub nom.*, *Reyna-Abarca v. People*, 2017 CO 15, 390 P.3d 816.

¶ 30 For five reasons, we reject Morris's challenge to the court's instruction.

¶ 31     First, we disagree with Morris's argument that the removal of "lack of evidence" from the 2022 model instructions lowered or shifted the burden of proof or undermined the presumption of innocence.  As two previous divisions of this court concluded, not including "lack of evidence" in a reasonable doubt instruction does not lower the prosecution's burden of proof.  *Schlehuber*, ¶ 20, 572 P.3d at 648; *Melara*, ¶ 24, 572 P.3d at 627.

¶ 32     In addition, as explained in *Schlehuber*, the 2022 model reasonable doubt instructions do not preclude the jury's consideration of the prosecution's lack of evidence.  *Schlehuber*, ¶ 22, 572 P.3d at 649.  This concept was subsumed within the court's instruction, which informed the jury that "the prosecution bears the burden of proof" and that Morris is "presumed innocent unless the prosecution meets its burden."  *Id.*  Moreover, the ultimate paragraph of the court's instruction told the jury that it must consider "all the evidence" when determining whether the prosecution met its burden of proof: "After considering all the evidence, if you decide the prosecution has failed to prove any one or more of the elements of a crime charged beyond a reasonable doubt, you should find the defendant not guilty of that crime."  *See*

*id.* And the "fail[ure] to prove" language unambiguously instructed the jury that it could not convict Morris unless the prosecution proved every element of the first degree possession of contraband count beyond a reasonable doubt and that the jury was required to return a not guilty verdict if it found a material gap in the prosecution's proof.

¶ 33     Accordingly, the court's instruction clearly informed the jury that, "if the prosecution fails to present sufficient evidence of guilt, it will not have met its burden." *Id.* (citing *United States v. Petty*, 856 F.3d 1306, 1311 (10th Cir. 2017)); *see also Rault v. Louisiana*, 772 F.2d 117, 137 (5th Cir. 1985) ("These instructions necessarily conveyed the concept that a reasonable doubt would arise in the absence of evidence sufficient to show guilt beyond a reasonable doubt.").

¶ 34     Because "there is no reasonable likelihood [that] the jury understood" the court's instruction as "unconstitutionally lower[ing] the prosecution's burden of proof below the reasonable doubt standard," the court did not err by not referring to "lack of evidence" in the court's instruction. *Schlehuber*, ¶ 25, 572 P.3d at 649; *see Melara*, ¶ 32, 572 P.3d at 628. Further, the reappearance of "lack

17

of evidence" in the 2023 model reasonable doubt jury instructions does not mean that the omission of such language from the 2022 model instructions "unconstitutionally lower[ed] the prosecution's burden of proof below the reasonable doubt standard." *Schlehuber*, ¶¶ 18 n.2, 25, 572 P.3d at 648 n.2, 649.

¶ 35 Second, we reject Morris's contention that the court lowered and shifted the burden of proof and undermined the presumption of innocence by omitting from the court's instruction the "hesitate to act" language that appeared in the 2021 model instructions. We disagree because, like the *Schlehuber* division, we do not see why it would be error not to include "hesitate to act" in a reasonable doubt instruction, "so long as the instruction otherwise correctly defines the reasonable doubt standard." *Id.* at ¶ 28, 572 P.3d at 650.

¶ 36 Third, we disagree with Morris's argument that the reference in the court's instruction to a "real possibility" that the defendant was not guilty lowered and shifted the burden of proof and undermined the presumption of innocence. *See id.* at ¶ 34, 572 P.3d at 651.

¶ 37 The court's instruction said that "reasonable doubt" is a "real possibility that [Morris] is not guilty" and that it "requires more

18

than proof that something is highly probable." *See* COLJI-Crim. E:03 (2022). This definition of reasonable doubt "has been consistently approved by federal courts as an accurate expression of the reasonable doubt standard." *Schlehuber*, ¶ 30, 572 P.3d at 650; *see, e.g., Victor v. Nebraska,* 511 U.S. 1, 24-27 (1994) (Ginsburg, J., concurring in part and concurring in the judgment) (concluding that a similar definition of reasonable doubt "surpasse[d] others . . . in stating the reasonable doubt standard succinctly and comprehensibly").

¶ 38      Indeed, the "phrase 'real possibility' correctly directs the jury not to acquit the defendant simply because it can conceive of *some* fanciful possibility that the defendant is not guilty." *Schlehuber*, ¶ 31, 572 P.3d at 650. Thus, the "'real possibility' language simply explain[s] the threshold [that] the prosecution must overcome" to prove each element of the offense beyond a reasonable doubt. *Id.* at ¶ 34, 572 P.3d at 651.

¶ 39      Moreover, "equating reasonable doubt with a 'real possibility' [does not] shift the burden to the defendant to establish that real possibility." *Id.* First, the sentence in the court's instruction referring to "real possibility" says that, if a juror thinks "there is a

19

real possibility that the defendant is not guilty, then *the prosecution has failed to prove the crime charged beyond a reasonable doubt.*" (Emphasis added.) Second, the court's instruction correctly informed the jury that it was required to presume Morris's innocence, the burden of proof was "upon the prosecution," and the "prosecution must prove to the satisfaction of the jury beyond a reasonable doubt the existence of each and every element necessary to constitute the crime charged." Finally, as noted above, the court's instruction said that, "[a]fter considering all the evidence, if [the jury] decide[s] the prosecution has failed to prove any one or more of the elements of a crime charged beyond a reasonable doubt, [the jury] should find the defendant not guilty of that crime."

¶ 40 Accordingly, the court's instruction did not suggest that Morris must be "the source of the 'real possibility'" that he was not guilty. *Id.* (quoting *United States v. Taylor*, 997 F.2d 1551, 1557 (D.C. Cir. 1993)).

¶ 41 Fourth, we disagree with Morris's contention that the "firmly convinced" phrase in the court's instruction left "the door open for a juror to be 'firmly convinced' by impermissible, non-evidentiary considerations — for example, counsel's arguments, the juror's

personal bias, or a simple, gut-level impulse." He argues that the "firmly convinced" phrase was "particularly dangerous in [his] case, where the jurors were asked to set aside any personal biases they might have against an incarcerated defendant."

¶ 42 As the *Schlehuber* division explained, "[t]he phrase 'firmly convinced' correctly connotes a standard of 'near certitude'" — greater than "highly probable" but less than absolute certainty. *Id.* at ¶ 31, 572 P.3d at 650 (quoting *Jackson v. Virginia*, 443 U.S. 307, 315 (1979)); *see People v. Camarigg*, 2017 COA 115M, ¶ 49, 488 P.3d 267, 276-77 (recognizing the distinction between "proof beyond a reasonable doubt and proof beyond all doubt"). In addition, the *Melara* division characterized the "firmly convinced" phrase as "an accurate statement of the law." *Melara*, ¶ 30, 572 P.3d at 628. Moreover, as noted above, the court's instruction, including the phrase "firmly convinced," has been "consistently approved by federal courts as an accurate expression of the reasonable doubt standard." *Schlehuber*, ¶ 30, 572 P.3d at 650; *see, e.g., Victor*, 511 U.S. at 24-27 (Ginsburg, J., concurring in part and concurring in the judgment); *Harris v. Bowersox*, 184 F.3d 744, 751-52 (8th Cir. 1999); *United States v. Brand*, 80 F.3d 560, 566 (1st Cir. 1996).

21

¶ 43	Morris's argument regarding the phrase "firmly convinced" in the court's instruction ignores the court's other instructions germane to the prosecution's burden of proof. Not only did the court's instruction inform the jury that it had to presume Morris's innocence, but jury instruction number seven told the jury to "consider only the evidence in this case and reasonable inferences therefrom." Further, jury instruction number one explained that the jury's decision must "be made by applying the rules of law" and that the jury could not base its decision on "sympathy, bias, or prejudice." "Absent a contrary showing," we presume that the jury followed the instructions it received from the court. *People v. Dominguez-Castor*, 2020 COA 1, ¶ 91, 469 P.3d 514, 529.

¶ 44	Fifth, we reject Morris's argument that the court did not correctly instruct the jury on the prosecution's burden of proof because of the cumulative effect of the deficiencies in the court's instruction. Because we conclude that the court did not err in giving the court's instruction, there was no cumulative error.

## 2. Prosecutorial Misconduct

¶ 45    Morris contends that the prosecutor's improper rebuttal closing argument compounded the errors in the court's instruction. We disagree.

### a. Standard of Review

¶ 46    To the extent that Morris presents a prosecutorial misconduct argument, he did not preserve it because defense counsel did not object when the prosecutor made the challenged remarks. *See Martinez v. People*, 2015 CO 16, ¶ 14, 344 P.3d 862, 868 ("Parties must make objections that are specific enough to draw the trial court's attention to the asserted error.").

¶ 47    When reviewing a claim of prosecutorial misconduct, we first "must determine whether the prosecutor's questionable conduct was improper based on the totality of the circumstances and, second, whether such actions warrant reversal according to the proper standard of review." *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010).

¶ 48    Because Morris did not preserve his prosecutorial misconduct argument, "we apply a plain error standard of review." *Id.* at 1097.

¶ 49     To constitute plain error, prosecutorial misconduct must be

"flagrant or glaring or tremendously improper, and it must so

undermine the fundamental fairness of the trial as to cast serious

doubt on the reliability of the judgment of conviction." *People v.*

*Rhea*, 2014 COA 60, ¶ 43, 349 P.3d 280, 291 (quoting *People v.*

*Weinreich*, 98 P.3d 920, 924 (Colo. App. 2004)), *aff'd,* 119 P.3d

1073 (Colo. 2005).  "[P]rosecutorial misconduct in closing

arguments rarely, if ever, is so egregious as to constitute plain

error."  *Id.* (quoting *People v. Constant,* 645 P.2d 843, 847 (Colo.

1982)).

b.     The Court Did Not Plainly Err by Allowing
the Prosecutor to Make the Challenged Statements

¶ 50     During his rebuttal closing argument, the prosecutor said:

> This is the simplest explanation[:] he knows,
> and that's based on evidence and the
> reasonable inferences without having to
> concoct up any additional evidence that he
> couldn't possibly know because it was too
> quick.  He's guilty of possession [of]
> contraband in the first degree, possession of a
> dangerous instrument based on the evidence
> and the reasonable inferences therefrom.

¶ 51     The prosecutor did not engage in misconduct because he

properly commented on the lack of evidence corroborating Morris's

claim that he did not knowingly possess the instruments. *See*

*People v. Esquivel-Alaniz*, 985 P.2d 22, 23 (Colo. App. 1999)

("[C]omment on the lack of evidence confirming a defendant's theory

of the case is permissible and does not shift the burden of proof.");

*see also People v. Ramirez*, 997 P.2d 1200, 1211 (Colo. App. 1999)

(rejecting the defendant's argument that the "prosecutor's

statements characterizing [the defendant's] defense as 'blowing

smoke' and 'smoke' were an improper comment on [defense]

counsel's belief in the merits of [the defendant's] case"), *aff'd by an*

*equally divided court*, 43 P.3d 611 (Colo. 2001); *People v. Serpa*, 992

P.2d 682, 686 (Colo. App. 1999) (finding no error because the

prosecutor's suggestion that the defense was attempting to "diver[t]"

and "sidetrack" the jury conveyed the message that the jurors

needed to consider the "specific evidence the defense had presented

during the course of trial").

¶ 52    It was also permissible for the prosecutor to tell the jury that it

must base its determination of guilt "on the evidence and the

reasonable inferences therefrom." *See People v. Walters*, 148 P.3d

331, 334 (Colo. App. 2006) ("During closing argument, a prosecutor

has wide latitude and may refer to the strength and significance of

the evidence, conflicting evidence, and reasonable inferences that may be drawn from the evidence."); *see also People v. Bertrand*, 2014 COA 142, ¶ 15, 342 P.3d 582, 585 ("Jurors must rely on the evidence presented at trial and their own common sense to determine the question of guilt.").

¶ 53　　Thus, the court did not err by not sua sponte striking the prosecutor's comments on the lack of evidence supporting Morris's theory of defense.

### III.　Disposition

¶ 54　　The judgment is affirmed.

JUDGE DUNN and JUDGE KUHN concur.