Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 15, 2020

**2020 CO 57**

**No. 19SC448, *People v. Harrison*—§ 18-1-711(1)(a), C.R.S. (2019)—Good-Faith Reporting Requirement—Requirement to Report Acute Condition Caused by Consumption or Use of Drugs or Alcohol—Objective and Subjective Standards—Sufficiency of the Evidence to Disprove Affirmative Defense.**

The supreme court holds that the plain language of section 18-1-711(1)(a), C.R.S. (2019), requires both that a person report in good faith what she subjectively perceives is an acute condition caused by the consumption or use of drugs or alcohol and that a layperson would reasonably believe that the reported condition is a drug or alcohol overdose needing medical assistance. Further, assuming without deciding that the defendant was entitled to invoke section 18-1-711 as an affirmative defense at trial, the court concludes that the evidence introduced, when viewed as a whole and in the light most favorable to the prosecution, was sufficient to disprove her affirmative defense and support her convictions. Because the court of appeals reached different conclusions on both fronts, its judgment is reversed.

## The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203

## 2020 CO 57

### Supreme Court Case No. 19SC448
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 17CA1372

### Petitioner:

The People of the State of Colorado,

**v.**

### Respondent:

Brittany Page Harrison.

### Judgment Reversed
*en banc*
June 15, 2020

**Attorneys for Petitioner:**
Philip J. Weiser, Attorney General
Trina K. Taylor, Assistant Attorney General
*Denver, Colorado*

**Attorneys for Respondent:**
Megan A. Ring, Public Defender
Jessica Sommer, Deputy Public Defender
*Denver, Colorado*

**JUSTICE SAMOUR** delivered the Opinion of the Court.

¶1 In Colorado, if a person suffers an emergency drug or alcohol overdose event and certain requirements are satisfied, she may not be prosecuted, or even arrested, for possession of a controlled substance or possession of drug paraphernalia. § 18-1-711(1)–(3), C.R.S. (2019). One of those requirements is that someone must have "report[ed] in good faith [the] emergency drug or alcohol overdose event to a law enforcement officer, to the 911 system, or to a medical provider." § 18-1-711(1)(a).

¶2 Brittany Page Harrison was charged with possession of two controlled substances and drug paraphernalia. Before trial, she filed a motion to dismiss, arguing that she was entitled to immunity pursuant to section 18-1-711 because she had suffered an emergency drug overdose event that was reported by another person to the 911 system. Though the district court denied her motion, it allowed her to rely on that statute to raise an affirmative defense at trial. The jury found Harrison guilty as charged, but a division of the court of appeals vacated her judgment of conviction.

¶3 In what is our first foray into the safe haven created by section 18-1-711, we must resolve two questions. First, did the division correctly construe the requirement in section 18-1-711(1)(a) that a person must "report[] in good faith an emergency drug or alcohol overdose event"? Second, did the division correctly conclude that the prosecution failed to present sufficient evidence to disprove

Harrison's affirmative defense and, consequently, to support her convictions? Because we answer both questions in the negative, we reverse the division's judgment.

¶4 Though section 18-1-711 is hardly a paragon of clarity, we hold that the plain language of subsection (1)(a) requires both that a person report in good faith what she subjectively perceives is an acute condition caused by the consumption or use of drugs or alcohol and that a layperson would reasonably believe that the reported condition is a drug or alcohol overdose needing medical assistance. Further, assuming without deciding that Harrison was entitled to invoke section 18-1-711 as an affirmative defense at trial, we hold that the evidence introduced, when viewed as a whole and in the light most favorable to the prosecution, was sufficient to disprove the affirmative defense beyond a reasonable doubt.

## I. Facts and Procedural History

¶5 One morning, Harrison and her teenage friend, A.M., walked into a Burger King, ordered food, and sat down in a booth. About an hour and a half later, staff noticed that Harrison and A.M. had not touched their food, were slumped on the table, and appeared to be asleep. At the request of the restaurant's manager, an employee attempted to wake them up by touching their shoulders, shaking them, banging on the table, and yelling. Harrison and A.M. didn't even flinch or open

3

their eyes. Shortly thereafter, the manager asked the employee to take another crack at waking Harrison and A.M. He obliged, but was unsuccessful.

¶6 Because she was concerned for the two patrons' well-being and wondered if something was wrong, the manager called 911. She asked for help for two individuals who were sleeping in the restaurant and would not wake up. Her expectation was that the police would respond, rouse Harrison and A.M., admonish them about sleeping there, and ask them to leave. It "never really crossed [her] mind" that either of them was suffering from a drug or alcohol overdose. She did not observe anything that looked like drugs or paraphernalia or any signs that were indicative of intoxication or impairment.

¶7 Corporal Payne was the first to respond. Harrison woke up after he shook her and announced himself. He could not get A.M. to wake up, and A.M. was eventually transported to a hospital via ambulance. Upon awakening, Harrison was sluggish and groggy. But soon after, she provided her identification, asked if she could eat her food, ate a hamburger, and had a brief conversation with Corporal Payne. Corporal Payne documented in his report that in response to one of his questions, Harrison indicated that she had not used drugs that day.

¶8 Officer Gonzales arrived while Corporal Payne was talking with Harrison. As he watched their interaction, he thought that she appeared to be under the influence of some substance. Corporal Payne concurred. With Harrison's

4

permission, Corporal Payne searched her purse, where he discovered a syringe, a spoon, a butane torch, tin-foil with burn marks, and a baggie with a tar-type substance that later tested positive for heroin. Harrison also consented to a search of her backpack. Inside the backpack, Officer Gonzales found two glass pipes, a lighter, butane fluid, two butane torches, aluminum foil, and a baggie containing a powdery substance that later tested positive for methamphetamine.

¶9 Based on the items collected during the two searches, Harrison was arrested. Corporal Payne and Officer Gonzales noted that she had no trouble walking. And Harrison did not require or receive any medical assistance.

¶10 The prosecution subsequently charged Harrison with two counts of possession of a controlled substance (one alleging possession of heroin and the other alleging possession of methamphetamine) and one count of possession of drug paraphernalia. She pled not guilty to the three charges.

¶11 Before trial, Harrison filed a motion to dismiss, asserting immunity under section 18-1-711. Following an evidentiary hearing, the district court denied the motion, finding that Harrison was not immune from criminal liability because she had not suffered an "emergency drug or alcohol overdose event," as that term is defined in section 18-1-711(5): "an acute condition including, but not limited to, physical illness, coma, mania, hysteria, or death resulting from the consumption or use of a controlled substance, or of alcohol, . . . and that a layperson would

reasonably believe to be a drug or alcohol overdose that requires medical assistance." However, the court permitted her to raise an affirmative defense at trial based on section 18-1-711. The jury still found her guilty of all three charges.

¶12 Harrison appealed, and a division of the court of appeals vacated her judgment of conviction based on its construction of the requirement in section 18-1-711(1)(a) that a person must "report[] in good faith an emergency drug or alcohol overdose event." *People v. Harrison*, 2019 COA 63, ¶¶ 11, 22–25, 29, __ P.3d __, __ (quoting § 18-1-701(1)(a)). The division determined that "immunity must apply" so long as a reasonable person in the shoes of the person reporting the event would have believed that there was an emergency drug or alcohol overdose event. *Id.* at ¶¶ 22–25. Relying on this interpretation, the division held that the prosecution had failed to meet its burden of disproving the affirmative defense because the evidence at trial "was insufficient to disprove that a reasonable person in the manager's position would have believed that an 'emergency drug or alcohol overdose event' may be occurring." *Id.* at ¶ 28.

¶13 The prosecution then sought review in our court, and we granted certiorari.[1]

---

[1] We granted certiorari to review the following two issues:
  1. Whether the court of appeals correctly interpreted the requirement in the drug overdose immunity statute, section 18-1-711(1)(a), C.R.S. (2019),

6

## II. Analysis

¶14 We begin by interpreting section 18-1-711(1)(a). We then evaluate the sufficiency of the prosecution's evidence vis-à-vis Harrison's affirmative defense. We conclude that the division misread section 18-1-711(1)(a) and erred in ruling that the prosecution failed to present sufficient evidence in support of Harrison's convictions.

## A. Interpretation of Section 18-1-711(1)(a)

¶15 The interpretation of section 18-1-711 involves a question of law. *See Isom v. People*, 2017 CO 110, ¶ 5, 407 P.3d 559, 560 (noting that "[s]tatutory interpretation is a question of law"). "We review questions of law de novo." *Howard-Walker v. People*, 2019 CO 69, ¶ 22, 443 P.3d 1007, 1011.

¶16 When construing a statute, we strive to give effect to the legislature's intent. *Colo. Med. Bd. v. McLaughlin*, 2019 CO 93, ¶ 22, 451 P.3d 841, 845. The first step in this endeavor is to examine the statutory language. *Cowen v. People*, 2018 CO 96, ¶ 12, 431 P.3d 215, 218. In the absence of a definition, we must read statutory terms according to their plain and ordinary meaning. *Id.* at ¶ 14, 431 P.3d at 218. To

---

that a person "report[] in good faith an emergency drug or alcohol overdose event."

2. Whether the court of appeals correctly concluded that the defendant's convictions were not supported by sufficient evidence.

7

ascertain the plain and ordinary meaning of a word in a statute, "we may consider a definition in a recognized dictionary." *Id.*

¶17   We are required to read the words and phrases in a statute in context. *Id.* at ¶ 13, 431 P.3d at 218. And we must "give consistent effect to all parts of [the] statute, and construe each provision in harmony with the overall statutory design." *Id.* (alteration in original) (quoting *Larrieu v. Best Buy Stores, L.P.*, 2013 CO 38, ¶ 12, 303 P.3d 558, 560–61). This concept goes hand-in-hand with the notion that courts must avoid constructions that render any word in a statute superfluous. *Mook v. Bd. of Cty. Comm'rs*, 2020 CO 12, ¶ 36, 457 P.3d 568, 576.

¶18   If the statutory language is clear and unambiguous, we apply it as written and look no further. *Cowen*, ¶ 12, 431 P.3d at 218. This is so because "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992).

¶19   Here, as a prelude to our interpretation of section 18-1-711, we assume without deciding that Harrison was entitled to invoke the statute as an affirmative defense to the charges brought against her.[2]   Thus, pursuant to section

---

[2] The prosecution maintains that section 18-1-711 reflects that the General Assembly intended to create a bar, not an affirmative defense, to criminal prosecution for certain offenses. Because we did not grant certiorari to review this

8

18-1-711(1)–(2), Harrison's conduct was legally authorized if she "suffered [an] emergency drug or alcohol overdose event" and:

> (a) *[A] person report[ed] in good faith [the] emergency drug or alcohol overdose event* to a law enforcement officer, to the 911 system, or to a medical provider;
>
> (b) The person remain[ed] at the scene of the event until a law enforcement officer or an emergency medical responder arrive[d] or the person remain[ed] at the facilities of the medical provider until a law enforcement officer arrive[d];
>
> (c) The person identifie[d] . . . herself to, and cooperate[d] with, the law enforcement officer, emergency medical responder, or medical provider; and
>
> (d) [Harrison's] offense[s] ar[ose] from the same course of events from which the emergency drug or alcohol overdose event arose.

(Emphasis added.)

¶20 Only the condition set forth in paragraph (a) is at issue in this appeal. To be more precise, the question we confront revolves around the first part of that condition—"[a] person reports in good faith an emergency drug or alcohol overdose event." In construing this language, the division focused almost exclusively on the definition of "an emergency drug or alcohol overdose event." *See Harrison*, ¶ 22. That definition appears in subsection (5) of the statute:

---

question, and because the issue hasn't been fully briefed, we pass no judgment on it.

9

(5) As used in this section, unless the context otherwise requires, "emergency drug or alcohol overdose event" means an acute condition including, but not limited to, physical illness, coma, mania, hysteria, or death resulting from the consumption or use of a controlled substance, or of alcohol, . . . *and that a layperson would reasonably believe to be a drug or alcohol overdose that requires medical assistance.*

§ 18-1-711(5) (emphasis added).[3]

¶21 Because subsection (5) defines a phrase in subsection (1)(a) — "emergency drug or alcohol overdose event" — and because that definition refers to what "a layperson would reasonably believe," the division inferred that subsection (1)(a) is governed by an objective standard. *Harrison*, ¶ 22. This standard, reasoned the division, does not encompass whether the person making the report "subjectively perceive[s] an emergency overdose." *Id.* at ¶ 23. According to the division, what the person making the report subjectively perceives is irrelevant. *Id.* at ¶¶ 22–25. The division therefore ruled that "the manager's subjective knowledge or ignorance" of the reason Harrison would not wake up was immaterial. *Id.* at ¶ 22.

---

[3] The definition in subsection (5) also includes an acute condition, which resulted from the consumption or use of "another substance with which a controlled substance or alcohol was combined" and which a layperson would reasonably have believed was a drug or alcohol overdose requiring medical assistance. § 18-1-711(5). Because this part of the definition has no relevance here, we omit it from our discussion.

¶22 We cannot embrace the division's analysis because it fails to give effect to some of the words in subsection (1)(a). Subsection (1)(a) requires that a person make a report, "in good faith," of "an emergency drug or alcohol overdose event." Hence, given the definition of an "emergency drug or alcohol overdose event" in subsection (5), subsection (1)(a) requires: first, that a person report in good faith an acute condition (e.g., a physical illness, a coma, mania, hysteria, or death) caused by the consumption or use of a controlled substance or alcohol; and second, that a layperson would reasonably believe that the reported condition is a drug or alcohol overdose necessitating medical help.

¶23 The division read the "good faith" requirement out of the rule. *See Harrison*, ¶¶ 22–25. It suggested instead that subsection (1)(a) simply requires that a person make a report of an event that "a reasonable person would have perceived" to be "a drug overdose event at the time the [report] was made." *Id.* at ¶ 24 (emphasis omitted). Following this logic, the division found that the only relevant evidence here was that when the manager called 911, Harrison had entered the Burger King, ordered food, and become unresponsive for an extended period of time. *Id.* at ¶ 25. The division's decision thus turned on whether these circumstances would have led a layperson to reasonably believe that Harrison was suffering from an emergency drug or alcohol overdose. What the manager subjectively perceived before calling 911 was of no moment to the division. *Id.* at ¶ 22.

¶24    We, however, can conceive of no way to assess whether the manager made her report to the 911 system in good faith without considering her subjective perception of Harrison's state. "[G]ood faith" is "[a] state of mind consisting in . . . honesty in belief or purpose." *Good Faith*, Black's Law Dictionary (11th ed. 2019). If the subjective perception of the person making the report is taken out of the equation, how can a jury ever evaluate whether she acted with honesty in belief or purpose? Reporting an event with honesty necessarily means accurately reporting one's perception of the event.[4] Accordingly, in contrast to the division's determination, we conclude that the good-faith requirement renders the subjective perception of the person making the report relevant.

¶25    True, the division acknowledged the "good faith" requirement: "[I]mmunity must apply so long as the person reporting the event reports in good faith an 'acute condition' that a reasonable person would believe to be a drug or alcohol overdose." *Harrison*, ¶ 22 (emphasis omitted). But it deprived it of any meaning in the next breath: "[T]o require the person reporting the overdose to

---

[4] Harrison urges us to interpret "good faith" as relating only to whether the report was made for a proper purpose and not to defraud someone or seek some type of unconscionable advantage. But nothing in the language of the statute supports this overly restrictive construction. And we are duty-bound to give the term "good faith" its plain and ordinary meaning. *Cowen*, ¶ 12, 431 P.3d at 218.

subjectively perceive an emergency overdose [] would necessitate reading terms into the statute 'that simply are not there.'"  *Id.* at ¶ 23 (quoting *People v. Benavidez*, 222 P.3d 391, 393–94 (Colo. App. 2009)).  Contrary to the division's belief, no terms must be added because the term "good faith" already appears in subsection (1)(a). It just needs to be effectuated.

¶26     The division also seemingly overlooked the part of subsection (1)(a) that describes what must be reported in good faith.  It intimated that subsection (1)(a) requires a good-faith report of *an abstract event* that a layperson would reasonably believe to be a drug or alcohol overdose necessitating medical assistance.  But subsection (1)(a) is more specific—it requires a report of *an acute condition, which is caused by the consumption or use of drugs or alcohol* and which a layperson would reasonably believe is a drug or alcohol overdose necessitating medical assistance. Hence, subsection (1)(a) cannot be satisfied if the person making the report does not report in good faith (i.e., with honesty) what she subjectively perceives is an acute condition caused by the consumption or use of drugs or alcohol.

¶27     Ultimately, in attempting to honor the cardinal rule of statutory interpretation that prohibits the infusion of words into a statute, the division ended up violating a different cardinal rule of statutory interpretation because it rendered some words in subsection (1)(a) meaningless.  *See Mook*, ¶ 36, 457 P.3d at

576. Inasmuch as we are required to give effect to every word in a statute, *see id.*, we must disapprove of the division's interpretation.

¶28 We are not persuaded otherwise by Harrison's insistence that the division was correct in reading subsection (1)(a) as imposing an objective standard based on the part of the definition in subsection (5) that refers to what "a layperson would reasonably believe to be a drug or alcohol overdose that requires medical assistance." § 18-1-711(5). In our view, subsection (1)(a) involves both a subjective standard and an objective standard. Subsection (5) injects an objective standard into the analysis. But, for the reasons we've articulated, subsection (1)(a)'s good-faith requirement imposes a subjective standard as well. These are not mutually exclusive propositions. Both standards can be, and we think are, relevant considerations in subsection (1)(a). That a layperson must reasonably believe that the drug-or-alcohol-related acute condition being reported is a drug or alcohol overdose in need of medical intervention does not dispense with the subjective requirement that a person must report in good faith what she perceives to be an acute condition resulting from the consumption or use of drugs or alcohol.

¶29 In sum, we hold that subsection (1)(a) requires both that a person report in good faith what she subjectively perceives is an acute condition caused by the consumption or use of drugs or alcohol and that a layperson would reasonably believe that the reported condition is a drug or alcohol overdose needing medical

14

assistance.  Because the division interpreted this statutory provision differently, it erred.

## B.  Sufficiency of the Evidence

¶30    Our interpretation of subsection (1)(a) does not end our inquiry.  We must still review the evidence presented at trial to decide whether it is sufficient to sustain Harrison's convictions.  More specifically, our task is to discern whether the prosecution presented sufficient evidence to disprove the affirmative defense raised by Harrison pursuant to section 18-1-711.[5]

¶31    "[W]e review the record de novo to determine whether the evidence before the jury was sufficient both in quantity and quality to sustain the convictions." *Dempsey v. People*, 117 P.3d 800, 807 (Colo. 2005).  The proper analytical framework for reviewing a sufficiency-of-the-evidence claim on appeal is the one we ushered in almost a half century ago in *People v. Bennett*, 515 P.2d 466 (Colo. 1973), in the context of the denial of a motion for judgment of acquittal.  *Clark v. People*, 232 P.3d 1287, 1288 (Colo. 2010).  *Bennett* made clear that to survive a motion for judgment of acquittal, the prosecution must establish a prima facie case of

[5] Harrison limits her sufficiency claim to whether the prosecution disproved the affirmative defense under section 18-1-711.  The jury was instructed on this affirmative defense based on the plain language of the statute.

guilt—that is, it must introduce sufficient evidence to establish guilt—"no more, no less." 515 P.2d at 469 (quoting *Corbett v. People*, 387 P.2d 409, 412 (Colo. 1963)).

¶32 Under *Bennett*'s substantial evidence test, we inquire whether the evidence, "viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." *Id.* In applying this test, we are required to "give the prosecution the benefit of every reasonable inference which might be fairly drawn from the evidence." *People v. Perez*, 2016 CO 12, ¶ 25, 367 P.3d 695, 701 (quoting *People v. Gonzales*, 666 P.2d 123, 128 (Colo. 1983)).

¶33 An appellate court may not serve as a thirteenth juror and consider whether it might have reached a different conclusion than the jury. *See Clark*, 232 P.3d at 1293. Nor may an appellate court "invade the province of the jury" by second-guessing any of the jury's findings that are supported by the evidence. *Perez*, ¶ 31, 367 P.3d at 702.

¶34 When an affirmative defense is submitted to the jury, it "effectively becomes an additional element of the charged offense." *Roberts v. People*, 2017 CO 76, ¶ 22, 399 P.3d 702, 705. "[T]he prosecution bears the burden of proving beyond a reasonable doubt that the affirmative defense is inapplicable." *Id.* In other words, the prosecution must prove beyond a reasonable doubt that the defendant's

16

conduct was not legally authorized by the affirmative defense. *See generally* COLJI-Crim. ch. H. To do so, the prosecution must disprove beyond a reasonable doubt at least one of the conditions of the affirmative defense. *Id.*

¶35 In this case, the division arrived at the wrong conclusion because it answered the wrong question. Given its interpretation of subsection (1)(a), the division understandably asked whether the prosecution had disproved that "a reasonable person in the manager's position would have believed that an 'emergency drug or alcohol overdose event'" was occurring at the time of the report. *Harrison*, ¶ 28. It vacated the judgment of conviction after determining that the prosecution had presented insufficient evidence to disprove that "a layperson would have reasonably concluded that [Harrison] was suffering an acute condition"—namely, unconsciousness—"caused by a drug or alcohol overdose."[6] *Id.* at ¶ 26.

¶36 But under our interpretation of subsection (1)(a), the correct question is whether the prosecution introduced sufficient evidence to disprove that the manager reported in good faith what she subjectively perceived to be an acute

---

[6] The prosecution does not contest that unconsciousness qualifies as an acute condition under subsection (5). We need not, and therefore do not, take a position on this point. Instead, we assume without deciding that unconsciousness is an acute condition for purposes of subsection (5).

condition, which was caused by the consumption or use of drugs or alcohol and which a layperson would reasonably have believed was a drug or alcohol overdose needing medical assistance. The record answers the correct question with a resounding "yes."

¶37 The manager testified that: She believed Harrison was asleep; she told the 911 operator that Harrison would not wake up; she expected that the responding officers would rouse Harrison, admonish her for sleeping in a restaurant, and ask her to leave; she did not observe any drugs or paraphernalia; she did not notice any signs of intoxication or impairment; and it never crossed her mind that Harrison was suffering from a drug or alcohol overdose. Viewing this evidence as a whole and in the light most favorable to the prosecution, it was sufficient to disprove that the manager reported in good faith what she perceived to be an acute condition resulting from the consumption or use of drugs or alcohol. Thus, even if, as the division found, the prosecution failed to present sufficient evidence to disprove that a layperson would reasonably have believed that Harrison was suffering from a drug or alcohol overdose in need of medical assistance, the prosecution still disproved the affirmative defense beyond a reasonable doubt.

¶38 In any event, we agree with the prosecution that it disproved beyond a reasonable doubt that Harrison actually suffered an acute condition brought on by

18

the consumption or use of drugs or alcohol.[7] The division implied that Harrison was unconscious and that her unconsciousness was an acute condition caused by the consumption or use of drugs. *Id.* However, even if unconsciousness qualifies as an acute condition under subsection (5), the division still erred because it assumed the role of a thirteenth juror, *see Clark*, 232 P.3d at 1293, and failed to give the prosecution the benefit of every reasonable inference that may be fairly drawn from the evidence, *see Perez*, ¶ 25, 367 P.3d at 701.

¶39     No one testified that Harrison was "unconscious." All of the pertinent witnesses said that Harrison was asleep. There was testimony as to the following: Harrison was tired and fell asleep; although the staff at Burger King could not wake her up, she awoke when Corporal Payne identified himself and shook her; she was sluggish and groggy upon waking up, but soon after provided her identification, asked if she could eat her food, ate a hamburger, and answered Corporal Payne's questions; she told Corporal Payne that she had not taken drugs; she was subsequently able to consent to have her purse searched by Corporal Payne and her backpack searched by Officer Gonzales; and she did not need help walking or require medical assistance. Giving the prosecution the benefit of every

---

[7] Recall that Harrison must have "suffered the emergency drug or alcohol overdose event" reported. § 18-1-711(2).

reasonable inference that may be fairly drawn from this evidence, we find that there was sufficient evidence to support a conclusion by a reasonable mind that Harrison was simply asleep.

¶40 The division refrained from considering much of this evidence, reasoning that whatever transpired after the 911 call was irrelevant. *Harrison*, ¶¶ 24–25. While that view may be correct as it relates to whether *a layperson would reasonably have believed* that Harrison was experiencing a drug or alcohol overdose in need of medical assistance *at the time of the 911 call*, it is incorrect as it bears on whether Harrison *actually suffered an acute condition caused by the consumption or use of drugs or alcohol*. This case demonstrates that what occurs after the report is made can be compelling evidence that a defendant did not suffer the type of acute condition contemplated by subsection (5).

¶41 Because the prosecution's evidence was sufficient to disprove beyond a reasonable doubt at least two conditions of the affirmative defense—though it was only required to disprove one condition—we hold that the evidence was sufficient to support Harrison's convictions. Therefore, on remand the division must reinstate the judgment of conviction.

20

## III. Conclusion

¶42 We conclude that the division erred in vacating Harrison's judgment of conviction. Accordingly, we reverse and remand for further proceedings consistent with this opinion.