23CA1895 Peo v Sanchez 02-12-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1895
Weld County District Court Nos. 22CR396 & 22CR652
Honorable Marcelo A. Kopcow, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Raymond Sanchez,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE GROVE
Yun and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 12, 2026

Philip J. Weiser, Attorney General, Brian M. Lanni, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Andrea R. Gammell, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Raymond Sanchez, appeals the judgment of conviction entered after a jury found him guilty of attempted second degree murder.[1]  He also challenges his sentence, contending that the trial court erred by imposing consecutive sentences for attempted second degree murder and second degree assault.  We affirm.

## I.     Background

¶ 2     Sanchez's charges stem from two criminal episodes that began as separate cases but were joined at trial.  A reasonable jury could find the following facts from the evidence presented.

¶ 3     In March 2022, Sanchez lived in the family home with his wife, P.D., their teenage son, L.D., and their eight-year-old son, M.D. After a disagreement, Sanchez assaulted P.D. and L.D., destroying several of their personal belongings in the process.  Thereafter, P.D. filed for divorce and obtained two protection orders against Sanchez, which required, among other conditions, that he vacate the family home.

---

[1] Sanchez was also convicted of another five additional felonies, nine misdemeanors, and two sentence enhancers.  He does not challenge these convictions on appeal.

¶ 4      Sanchez moved to Arizona but returned to the family home in Colorado early one morning in April 2022.  As P.D. was getting ready for the day, the home's security system alerted her to an intruder in the backyard.  She called 911 and locked herself and M.D. in an upstairs bedroom.

¶ 5      Sanchez broke a window on the first floor, grabbed a knife from the kitchen, and smashed through the locked bedroom door.  Wielding the knife, he accused P.D. of "trying to take everything" from him.  P.D. and Sanchez then grappled for the knife, and P.D. suffered wounds to her chest, arms, and legs.  The fight spilled over into a nearby bathroom, where Sanchez held P.D. down with the knife to her neck, cutting her.  Meanwhile, M.D. grabbed a baseball bat from the bedroom and hit Sanchez in the back of the head.  Sanchez was unfazed, and P.D. told M.D. to leave the house out of the front door.

¶ 6      M.D. ran to the neighbor's house for help.  Sanchez then hit P.D. in the back of the head with the bat.  P.D. managed to grab the knife from Sanchez and fling it away.  She sustained several knife wounds to her hands in the process, a chunk of her hair was ripped out, and she left a trail of blood in the hallway.  Sanchez then

stomped on P.D.'s head and choked her.  She threw herself back and the couple tumbled into another room, where Sanchez grabbed a green vase and slammed it against her head.  The assault ended when police arrived.

¶ 7     At trial, Sanchez's theory of defense was that he never intended to hurt P.D.  He testified that he believed that no one was home, that he broke into the home only to "get his stuff" and that he retrieved a knife and forced his way into the locked bedroom because he thought that there was *another* intruder in the house.  He claimed that P.D. attacked him and that he was only acting in self-defense.

¶ 8     A jury convicted Sanchez of attempted second degree murder and second degree assault with a deadly weapon (green vase), among five other felonies, nine misdemeanors, and two crime of violence sentence enhancement counts.  In response to an interrogatory for the attempted murder charge, the jury found that Sanchez used, or possessed and threatened the use of, the green vase and a knife as deadly weapons.  On the same form, the jury found that Sanchez did not use, or possess and threaten the use of, the baseball bat as a deadly weapon.

¶ 9    Sanchez was sentenced to a total of sixty-four years in the custody of the Department of Corrections — twenty-four years for attempted murder, a consecutive twenty-four years for first degree burglary, and a consecutive sixteen years for second degree assault with the green vase. He received concurrent sentences for the remaining convictions.

¶ 10   Sanchez now appeals, arguing that (1) there was insufficient evidence to convict him of attempted second degree murder and, in the alternative, (2) the court erred by imposing consecutive sentences for his second degree assault and attempted second degree murder convictions.

## II. Sufficiency of the Evidence

¶ 11   Sanchez alleges that the prosecution failed to present evidence sufficient to prove beyond a reasonable doubt that he attempted to murder P.D. We are not persuaded.

### A. Applicable Law and Standard of Review

¶ 12   A defendant commits second degree murder if he "knowingly causes the death of a person." § 18-3-103(1)(a), C.R.S. 2025. The mental state of "knowingly" is defined as follows:

> A person acts "knowingly" or "willfully" with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists. A person acts "knowingly" or "willfully", with respect to a result of his conduct, when he is aware that his conduct is practically certain to cause the result.

§ 18-1-501(6), C.R.S. 2025. To attempt to commit this offense, the defendant must act knowingly and engage in conduct constituting a substantial step toward the commission of the offense. *See* § 18-2-101(1), C.R.S. 2025. A defendant takes "a substantial step" when he engages in "any conduct, whether act, omission, or possession, which is strongly corroborative of the firmness" of the defendant's purpose to complete the commission of the offense. *Id.*

¶ 13 We review sufficiency of the evidence claims de novo. *McCoy v. People*, 2019 CO 44, ¶ 27. The prosecution has the burden of establishing a prima facie case of guilt through the introduction of sufficient evidence. *Id.* at ¶ 63. We consider "whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt."

5

*Id.* (quoting *People v. Bennett*, 515 P.2d 466, 469 (Colo. 1973)). An appellate court may not serve as a thirteenth juror and consider whether it might have reached a different conclusion than the jury. *People v. Harrison*, 2020 CO 57, ¶ 33. Nor may we "invade the province of the jury" by second-guessing any of the jury's findings that are supported by the evidence. *Id.* (quoting *People v. Perez*, 2016 CO 12, ¶ 31).

## B. Analysis

¶ 14    Sanchez argues that because the prosecution "presented no evidence that Sanchez at any time threatened to kill P.D." and because "P.D. sustained only superficial injuries" according to two experts called at trial, there was no evidence showing that he knowingly committed a substantial step towards murder.

¶ 15    Our review of the record reveals plentiful support for the jury's conclusion. Jurors could have inferred that Sanchez acted knowingly when he broke into the house, grabbed a kitchen knife, smashed through the locked bedroom door, accused P.D. of "trying to take everything" from him, and violently attacked her. *See People v. Johnson*, 2024 CO 32 ("Direct evidence of an individual's intent, such as an admission of their purpose in performing the prohibited

6

act, is rare; consequently, 'a defendant's intent can, and often must, be proved by circumstantial evidence.'") (citation omitted). The evidence showed that Sanchez's attack — which included holding a knife to P.D.'s neck, hitting her with a bat, stomping on her head, choking her, and smashing her head with a vase — was relentless and did not cease until police arrived. That two experts said P.D. did not have "life threatening injuries" nor knife wounds that cut her tendons or penetrated her "chest wall or thorax" is of no consequence. Severe injury to the victim is not a necessary element of attempted second degree murder.

¶ 16    Accordingly, the evidence was sufficient to support an inference that Sanchez took a substantial step toward murdering P.D. *See People v. Lehnert*, 163 P.3d 1111, 1113 (Colo. 2007) (A "substantial step" means any conduct that is "strongly corroborative of the actor's criminal objective."). While Sanchez provided an alternative explanation for his actions, it was within the jury's purview to determine his credibility. *See People v. Sprouse*, 983 P.2d 771, 778 (Colo. 1999) ("[T]he determination of the credibility of witnesses is solely within the province of the jury.").

### III. Consecutive Sentences

¶ 17    Sanchez contends that the trial court reversibly erred when it imposed consecutive sentences for second degree assault (green vase) and attempted second degree murder because those convictions are supported by identical evidence.  We disagree.

#### A. Applicable Law and Standard of Review

¶ 18    When a defendant is convicted of multiple offenses, the sentencing court generally has the discretion to impose either concurrent or consecutive sentences.  *Qureshi v. Dist. Ct.*, 727 P.2d 45, 46-47 (Colo. 1986).  However, there are statutory limits on that discretion.  Section 18-1.3-406(1)(a), C.R.S. 2021,[2] requires consecutive sentences for "two or more separate crimes of violence arising out of the same incident."  Section 18-1-408(3), C.R.S. 2025, on the other hand, requires concurrent sentences for two or more offenses committed against the same victim during the same

---

[2] In 2023, the statute was amended to move the quoted language from subsection (1)(a) to (1)(b).  *See* Ch. 297, sec. 1, § 18-1.3-406(1)(a)-(b), 2023 Colo. Sess. Laws 1778-79.  While the amendment did not substantively alter this language, the current statute only applies to crimes committed after July 1, 2023. Hence, all references to section 18-1.3-406 hereafter are to the version in effect when the crimes in this case were committed.

criminal episode that "are supported by identical evidence." Thus, when multiple convictions involving one victim are supported by identical evidence, the statute mandates the imposition of concurrent sentences. *Juhl v. People*, 172 P.3d 896, 899 (Colo. 2007).

¶ 19 Although the supreme court has not specifically resolved the issue, *see People v. Espinoza*, 2020 CO 43, ¶ 10, divisions of this court have held that crimes of violence are "separate" within the meaning of section 18-1.3-406(1)(a) to the extent that the prosecution did not prove them at trial by "identical evidence" within the meaning of section 18-1-408(3), *People v. O'Shaughnessy*, 275 P.3d 687, 697 (Colo. App. 2010), *aff'd*, 2012 CO 9; *see, e.g., People v. Trujillo*, 114 P.3d 27, 33 (Colo. App. 2004); *People v. Jurado*, 30 P.3d 769, 773 (Colo. App. 2001).

¶ 20 The concurrent sentencing requirement in section 18-1-408(3) applies only if the evidence supports "no other reasonable inference than that the convictions were based on identical evidence." *Chirinos-Raudales v. People*, 2023 CO 33, ¶ 25 (quoting *Juhl*, 172 P.3d at 900). To make that determination, we consider "whether the acts underlying the convictions were sufficiently separate." *Id.*

9

(quoting *Thompson v. People*, 2020 CO 72, ¶ 60); *see also Juhl*, 172 P.3d at 902 (evaluating whether the act underlying one conviction could be "logically separated" from the act underlying another conviction); *Chirinos-Raudales*, ¶ 25 (considering whether the separate convictions were based on more than one distinct act and, if so, whether those acts were separated by time and place).

¶ 21 "The mere possibility that the jury may have relied on identical evidence in returning more than one conviction is not alone sufficient to trigger the mandatory concurrent sentencing provision." *Chirinos-Raudales*, ¶ 25 (quoting *Thompson*, ¶ 61).

¶ 22 We review the court's application of section 18-1.3-406(1)(a) and section 18-1-408(3) de novo. *People v. Torres*, 224 P.3d 268, 277 (Colo. App. 2009).

### B. Analysis

¶ 23 We conclude that the trial court properly imposed consecutive sentences under section 18-1.3-406 for Sanchez's attempted second degree murder and second degree assault convictions because the convictions were not "supported by identical evidence" under section 18-1-408(3).

¶ 24    Arguing to the contrary, Sanchez maintains that the acts underlying the attempted second degree murder conviction occurred during a "single, short six-minute" episode against P.D. that included Sanchez's assault with the green vase.  Because the jury specifically found that he used the green vase when assaulting P.D. and also that he used the same weapon when attempting to murder her, Sanchez argues that the two convictions must be based on identical evidence.

¶ 25    This argument does not establish that the jury necessarily looked to the same evidence when it found Sanchez guilty of both attempted second degree murder and second degree assault (green vase).  *See Juhl,* 172 P.3d at 900 ("[T]he mere possibility that identical evidence may support two convictions is not sufficient to deprive the court of its discretion to impose consecutive sentences.").  While the jury found Sanchez used the knife and green vase as deadly weapons when committing attempted second degree murder (while also finding that he did not use the baseball bat), these findings do not foreclose the possibility that the jury relied on other evidence to support its verdict on the attempted murder charge.  *See Thompson,* ¶ 63.

¶ 26    To be sure, the jury *could* have relied solely on any one of Sanchez's actions, or some combination of all of them, as evidence to support its finding that the prosecution had satisfied the elements of attempted murder beyond a reasonable doubt.  But it was not required to do so.  For example, the jury may have used a combination of Sanchez's acts prior to the assaults to support its finding that he committed a "substantial step" towards murdering P.D., even if it also found that he later used the vase during the crime.  *See* § 18-2-101(1); *Schneider v. People*, 2016 CO 70, ¶ 23 (explaining that the identical evidence condition of section 18-1-408 applies only to evidence of the defendant's acts, or conduct, as distinguished from evidence of all of the elements of the offense).  It may have concluded that Sanchez took a substantial step when he booked a plane ticket to Colorado, staked out the house in a car prior to his attack, used a rock to break a window to gain access to the house, grabbed a knife before heading to the bedroom, broke down the bedroom door with his shoulder, and began physically assaulting P.D.  *See Juhl,* 172 P.3d at 902-03 (explaining that if the act that forms the basis of one charge cannot be logically separated from the act that formed the basis of the second, the acts are a part

12

of a single episode, subject to concurrent sentences); *People v. Patton*, 2016 COA 187, ¶ 24 (explaining that consecutive sentences are permitted in interrelated crimes if the proof of one crime does not form a substantial portion of the other); *People v. Hardin*, 607 P.2d 1291, 1295 (Colo. 1980) (holding convictions were not based on identical evidence for attempted murder and first degree assault charges where the defendant fired one shot at an officer's neck and others while the officer was lying on the ground).

¶ 27 Because there was only a mere possibility that the jury relied solely on Sanchez's actions with the green vase to support its finding of attempted second degree murder, concurrent sentencing was not required.

## IV. Disposition

¶ 28 We affirm the judgment and sentence.

JUDGE YUN and JUDGE SCHOCK concur.