24CA1382 Peo in Interest of BDR 04-09-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1382
El Paso County District Court No. 22JD691
Honorable Diana May, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of B.D.R.,

Juvenile-Appellant.

---

RULING DISAPPROVED

Division IV
Opinion by JUDGE FREYRE
Brown and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 9, 2026

---

Phillip J. Weiser, Attorney General, Jacob R. Lofgren, Senior Assistant Attorney General, Denver, Colorado, for Petitioner-Appellee

Madison R. Whitley, Alternate Defense Counsel, Denver, Colorado, for Juvenile-Appellant

¶ 1    Juvenile, B.D.R., appeals the district court's order disapproving the juvenile magistrate's judgment of acquittal, following a bench trial.  We perceive no error in the juvenile magistrate's judgment and therefore disapprove the district court's ruling.

## I.    Background

¶ 2    B.D.R. was a resident at the Emily Griffith Center.  He and several other juveniles were in a recreation room that was monitored by video surveillance.  According to video footage, which does not include audio, I.R. crawled toward B.D.R., who was sitting on a couch.  When I.R. reached the couch, B.D.R. grabbed the back of I.R.'s head with both hands and began pushing and pulling I.R.'s head up and down above his crotch area.  Both boys were fully clothed, and other boys were in the room.  I.R. then stood up but remained in the room.

¶ 3    A staff member who reviewed the video footage contacted the police.  Officer Andrew Marshall responded and interviewed I.R.

¶ 4    B.D.R. was charged with (1) attempted unlawful sexual contact; (2) harassment (ethnic intimidation); and (3) unlawful

sexual contact.  Before trial, the prosecution dismissed counts two and three, and the case proceeded only on count one.

¶ 5     At the bench trial, I.R. testified as follows:

> [PROSECUTOR]: I want to talk to you about October of 2022.  Do you remember being in the Emily Griffith Center?
>
> I.R.: Yeah.
>
> [PROSECUTOR]: And do you remember something happening on October 9th of that same year?
>
> I.R.: To be honest with you, sir, I don't remember.
>
> [PROSECUTOR]: Okay.  Do you remember meeting with an officer named Andrew Marshall?
>
> I.R.: I remember meeting with one officer, but I don't remember his name.
>
> [PROSECUTOR]: That's okay.  Do you remember talking to him about an incident that happened with a boy named [B.D.R.]?
>
> I.R.: No, sir, I don't remember that.
>
> [PROSECUTOR]: That's okay.  Do you remember telling him about how [B.D.R.] was sitting on a couch; do you remember that?
>
> I.R.: No, sir, I don't remember that.

[PROSECUTOR]: Do you remember telling him that [B.D.R.] then asked you to come over to him?

I.R.: No, sir, I don't remember that.

[PROSECUTOR]: Do you remember that this was all in what's called the common area of the Rocky Lodge?

I.R.: No, sir, I don't remember that, to be honest.

[PROSECUTOR]: Okay. That's okay. Do you remember telling that officer that [B.D.R.] then grabbed your head with both hands and then forced your head towards his crotch?

I.R.: I don't remember that, sir.

[PROSECUTOR]: Okay. Do you remember him then telling you, and I quote, "handle this dick like a man."

I.R.: No, sir.

[PROSECUTOR]: Do you remember saying that this continued for about 20 minutes?

I.R.: I don't remember that, sir.

[PROSECUTOR]: Do you remember telling that officer that [B.D.R.] did the same act to you later that evening as well?

I.R.: No, sir, I don't remember that.

[PROSECUTOR]: And that second time would have been between 1800 hours and 1900 hours?

3

I.R.: I don't remember that, sir.

[PROSECUTOR]: Do you remember telling that officer that this happened on the same couch the second time?

I.R.: No, sir, I don't remember that at all.

[PROSECUTOR]: And do you remember telling the officer that the second incident lasted for about 10 minutes?

I.R.: No, sir, I don't remember that.

[PROSECUTOR]: Do you remember telling the officer that you felt uncomfortable when [B.D.R.] was doing that to you?

I.R.: I don't remember that, sir.

[PROSECUTOR]: Okay. Do you remember telling the officer that you didn't know whether or not [B.D.R.] had an erection?

I.R.: I don't remember that, sir.

[PROSECUTOR]: Okay. Do you remember telling the officer that you have not been in a relationship with a boy named [B.D.R.]?

I.R.: I don't remember that, sir.

[PROSECUTOR]: Do you remember telling the officer that you had never had voluntary sexual acts with a boy named [B.D.R.]?

I.R.: I don't remember that, sir.

[PROSECUTOR]: And do you remember telling the officer that you did not want your head to be down on [B.D.R.]'s crotch?

4

I.R.: I don't remember that, sir.

[PROSECUTOR]: Okay. Do you – do you remember a boy named [B.D.R.] at all?

I.R.: Yeah.

¶ 6     I.R. could not identify B.D.R. in court. The prosecution then introduced the video footage.

¶ 7     At the end of the prosecution's case, B.D.R. moved for a judgment of acquittal and argued that no evidence was presented "that the attempt was for any form of sexual contact or that any of the knowledge requirements were even spoken to."

¶ 8     The prosecution responded that B.D.R.'s intent could be inferred from his actions as well as his knowledge:

> I think the Court can infer from everyday knowledge and understanding that when somebody grabs somebody else's head and then repeatedly throws – thrusts their head in an up and down motion over the period of 30 seconds over one's own crotch area, that is a clear simulation of a sexual act. The only reason to do that would be for sexual arousal.

¶ 9     The magistrate found:

> The Court does not find that there is enough evidence to go past half-time. What the Court is left with is we have [I.R.] who doesn't remember. He does remember that he was at the Emily Griffith Center. He doesn't remember any of the events. He doesn't even –

5

in regards – he remembers being at Emily Griffith, but in regard to being there in October, he doesn't remember, but it's clear based on the video, that he was there. The Court reviewed the video today, but the District Attorney's Office has to show that [B.D.R.] . . . knowingly subjected a person to sexual contact, knowing a person did not consent, this is an attempt. This issue is yes, I can see the video, I can see [B.D.R.] grabbing the head – the head of [I.R.], but in regards to subjecting a person . . . to sexual contact, in regards to the victim having contact with [B.D.R.], that is difficult for the Court to see. So, it's specifically in regards to the attempt of subjecting a person to any sexual contact. Therefore, the Court agrees . . . and grants the half-time judgment of acquittal.

¶ 10 The magistrate advised the parties of their right to appeal the decision under section 19-1-108(5.5), C.R.S. 2025.

¶ 11 The prosecution sought clarification of the magistrate's ruling, arguing that B.D.R. was charged with an "attempt" and not a completed act. B.D.R. responded that an "attempt" charge still required evidence that B.D.R. intended to have sexual contact with I.R. and that no such evidence was presented.

¶ 12 The magistrate expanded on the earlier ruling:

> And again, what the Court is left with is looking at the video. I do see force towards the crotch area of – again, [B.D.R.] taking the head of [I.R.] towards his crotch area, but again, I

6

can't find even – you know – forcing someone's head towards the crotch area, [the prosecutor] is asking the Court to speculate that this is the only reason why [B.D.R.] subjected [I.R.] to this type of act, and I can't make that leap without more. I agree that this is an attempt to commit sexual contact, but based on the video alone, I cannot find that there is enough for the Court to find an attempt to subject [to] sexual contact. [The prosecutor] is stating that it can only be this. I can't make that leap . . . given that I just have a video to view.

¶ 13 The prosecution filed a timely petition to review contending that the magistrate erred as a matter of law. Specifically, the prosecutor argued that the evidence, when viewed in the light most favorable to the prosecution, was sufficient to support a conclusion by a reasonable mind that [B.D.R.]'s actions were done for the purposes of sexual arousal, gratification, or abuse. The prosecution requested that the district court "disapprove of the juvenile court's order dismissing the charges against [B.D.R.]."

¶ 14 B.D.R. responded and argued that the district court lacked subject matter jurisdiction over the petition because of the "limited review available pursuant to [C.R.C.P.] 59." B.D.R. also asserted that, regardless, the magistrate properly granted the motion for judgment of acquittal given the lack of sufficient evidence to

7

support a finding that B.D.R. acted for the purpose of sexual arousal, gratification, or abuse.

¶ 15 The prosecution replied that the district court had jurisdiction, for three reasons. First, section 19-2.5-1301(2), C.R.S. 2025, provides that "[t]he prosecution in a delinquency case may appeal any decision of the trial court as provided in section 16-12-102[, C.R.S. 2025]," which states that the prosecutor "may appeal any decision of a court in a criminal case upon any question of law." The prosecutor argued that, when read together, the statutes make clear that the prosecution has the same right to appeal questions of law in delinquency cases as in criminal cases.

¶ 16 Second, when a juvenile magistrate grants a motion for judgment of acquittal, section 19-1-108(5.5) requires the prosecution to file a petition for review of the magistrate's order in the district court before an appeal may be filed in the Colorado Court of Appeals or Supreme Court. Therefore, to preserve the right to appellate review, the prosecution must first seek review in district court.

¶ 17    Third, section 19-1-108(5.5)'s reference to Rule 59 of the Colorado Rules of Civil Procedure did not preclude the district court from reviewing the magistrate's dismissal order.

¶ 18    The district court found that sections 19-2.5-1301 and 16-12-102, when "[r]ead together," make it "clear that the District Attorney has the same right to appeal questions of law in delinquency cases as in criminal cases." Further, the district court found that section 19-1-108(5.5) "does not limit appeals to the grounds listed in C.R.C.P. 59." Accordingly, the district court concluded that it had jurisdiction to consider the prosecution's petition for review. The district court then disapproved of the magistrate's judgment of acquittal and concluded that, when viewed in the light most favorable to the prosecution, acquittal should not have been granted.

¶ 19    On appeal, B.D.R. contends that the district court (1) lacked jurisdiction to review the juvenile court's order and (2) erroneously disapproved of the magistrate's judgment of acquittal. We conclude that the district court had jurisdiction to consider the petition for review, but we agree that there was insufficient evidence to support a finding that B.D.R.'s actions were for the purpose of sexual

9

arousal, gratification, or abuse and therefore disapprove of the district court's ruling.

## II.    Jurisdiction

¶ 20    B.D.R. contends that the district court lacked jurisdiction to consider the petition for review, for two reasons.  First, he argues that the prosecution improperly "chose to file its appeal pursuant to Rule 29 of the Colorado Rules of Criminal Procedure" rather than under section 19-1-108(5.5).  Second, he asserts that even if the district court had jurisdiction, the petition "did not request one of the types of relief articulated in C.R.C.P. 59."  We disagree with both contentions.

### A.    Standard of Review and Applicable Law

¶ 21    Questions of statutory interpretation are questions of law that we review de novo.  *In re People in Interest of A.T.C.*, 2023 CO 19, ¶14.  Similarly, we interpret rules de novo.  *Id.*; *see also Northstar Project Mgmt., Inc. v. DLR Grp., Inc.*, 2013 CO 12, ¶ 12 ("We interpret rules of procedure consistent with principles of statutory construction and, thus, review procedural rules de novo as well.").

¶ 22    When construing a statute, our primary task is to effectuate the legislature's intent.  *Colo. Prop. Tax Adm'r v. CO2 Comm., Inc.*,

2023 CO 8, ¶ 22. In doing so, "we look to the entire statutory scheme in order to give consistent, harmonious, and sensible effect to all of its parts," and we give "words and phrases . . . their plain and ordinary meanings." *UMB Bank, N.A. v. Landmark Towers Ass'n*, 2017 CO 107, ¶ 22.

¶ 23 Section 19-1-108 provides, in pertinent part,

> (3)(a.5) Magistrates shall conduct hearings in the manner provided for the hearing of cases by the court. During the initial advisement of the rights of any party, the magistrate shall inform the party that, except as set forth in this subsection (3), the party has the right to a hearing before the judge in the first instance and the party may waive that right but that, by waiving that right, the party is bound by the findings and recommendations of the magistrate, subject to a request for review as set forth in subsection (5.5) of this section. . . .
>
> . . . .
>
> (5.5) A request for review must be filed within fourteen days for proceedings under articles 2.5, 4, and 6 of this title or within seven days for proceedings under article 3 of this title after the parties have received notice of the magistrate's ruling and must clearly set forth the grounds relied upon. Such review is solely upon the record of the hearing before the magistrate and is reviewable upon the grounds set forth in rule 59 of the Colorado rules of civil procedure. A petition for review is a prerequisite before an appeal may be filed with

11

the Colorado court of appeals or Colorado supreme court. The judge may, on his or her own motion, remand a case to another magistrate after action is taken on a petition for review.

¶ 24 As referenced in that statute, Rule 59 of the Colorado Rules of Civil Procedure provides a variety of circumstances in which a party may file a post-trial motion, including for an "[e]rror in [l]aw." C.R.C.P. 59(d)(6).

## B. Analysis

¶ 25 We begin by rejecting B.D.R.'s argument that the prosecution improperly filed its appeal under Crim. P. 29 because the petition clearly asks the district court to "review and reverse the order of the Juvenile Magistrate . . . dismissing [B.D.R.'s] case under Rule 29." Crim. P. 29, "Motion for Acquittal," abolishes motions for directed verdicts in criminal cases and provides for motions for judgment of acquittal following the prosecution's case and at the end of all the evidence, if the evidence is insufficient to sustain a conviction. Crim. P. 29(a). The prosecution did not file its petition pursuant to Rule 29, but instead sought review of the magistrate's Rule 29 ruling. Therefore, the district court did not lack jurisdiction due to an improperly filed petition for review.

12

¶ 26 Next, we note that the parties agree that section 19-1-108(5.5) governs the procedural requirements for appealing the juvenile magistrate's order in this case. *See People in Interest of A.P.H.*, 2020 COA 159, ¶ 12. As relevant here, the statute permits review "solely upon the record of the hearing before the magistrate and is reviewable upon the grounds set forth in [R]ule 59 of the Colorado [R]ules of [C]ivil [P]rocedure." § 19-1-108(5.5); *see People v. A.S.M.*, 2022 CO 47, ¶ 19. In addressing the interplay between the statute and Rule 59, the supreme court has explained that "the reference in section 19-1-108(5.5) to C.R.C.P. 59 (which governs post-trial motions) presumably is meant to give the district court procedural guidance when ruling on the request for review." *People v. S.X.G.*, 2012 CO 5, ¶ 17.

¶ 27 B.D.R. relies on C.R.C.P. 59(a)(1)–(4) as the "grounds available for review." But he is mistaken. Rule 59(a) sets forth the relief available in a post-trial motion, while Rule 59(d) and (e) set forth the "grounds" on which the court may grant the requested relief. *See A.T.C.*, ¶ 23 n.2 (identifying the "grounds" upon which the district court may review the magistrate's order under section 19-1-108(5.5) as those included in Rule 59(d) and (e)). And one of

13

those grounds is an error in law. C.R.C.P. 59(d)(6). Because the prosecution's petition for review asserted that the juvenile magistrate erred as a matter of law in granting B.D.R.'s motion for judgment of acquittal, we conclude the district court had jurisdiction to consider the petition.[1] *See A.T.C.*, ¶ 35 (stating that Rule 59 "simply lays out the limited types of grounds for relief that a juvenile court may consider in connection with a petition for review, *such as errors in law and insufficiency of the evidence as a matter of law*" (emphasis added)).

### III. Judgment of Acquittal

B.D.R. next contends that the district court erroneously disapproved of the judgment of acquittal because it failed to consider the absence of evidence supporting the element requiring that the charged conduct be for the purposes of sexual arousal, gratification, or abuse. We agree.

---

[1] Because we conclude the district court had jurisdiction to review the petition under section 19-1-108(5.5), C.R.S. 2025, we need not address B.D.R.'s alternate argument that C.R.M. 7 does not provide a path for review.

## A. Additional Background Information

¶ 29    In rejecting the magistrate's order granting the judgment of acquittal, the district court found:

- I.R. testified that he could not remember the offense.

- Amy Buris authenticated Exhibit 1, the security recording of the incident.

- Marshall testified that Exhibit 1 "showed [I.R.] laying on the floor, [B.D.R.] waving over to him, then [I.R.] crawling over to [B.D.R.], who then grabbed [I.R.]'s head with both hands and started pushing and pulling his head up and down over his crotch area."

¶ 30    The district court concluded that "[s]uch evidence, as a matter of law, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crime charged beyond a reasonable doubt."  The district court noted that "[t]his is not to say as the trier of the fact, the Magistrate could have found [B.D.R.] not guilty of the charged offense," but as a matter of law the judgment of acquittal should not have been granted.

15

## B. Standard of Review and Applicable Law

¶ 31　We review de novo a district court's ruling on a motion for a judgment of acquittal for insufficient evidence. *Montes-Rodriguez v. People*, 241 P.3d 924, 927 (Colo. 2010). Whether a motion for a judgment of acquittal should be granted is determined by the substantial evidence test. *People v. Gonzales*, 666 P.2d 123, 127 (Colo. 1983). "Under this test, we ask whether the evidence, 'viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt.'" *Gorostieta v. People*, 2022 CO 41, ¶ 16 (quoting *People v. Harrison*, 2020 CO 57, ¶ 32). "[W]e must 'give the prosecution the benefit of every reasonable inference which might be fairly drawn from the evidence.'" *Id.* at ¶ 17 (quoting *Harrison*, ¶ 32).

¶ 32　Section 18-3-404(1)(a), C.R.S. 2025, provides that "[a]ny actor who knowingly subjects a victim to any sexual contact commits unlawful sexual contact if . . . [t]he actor knows that the victim does not consent." As relevant here, sexual contact includes "the knowing touching of the clothing covering the immediate area of the victim's or actor's intimate parts if that sexual contact is for the

16

purposes of sexual arousal, gratification, or abuse."

§ 18-3-401(4)(a), C.R.S. 2025. Whether the defendant acted "for the purposes of sexual arousal, gratification, or abuse" is a separate element from whether he subjected the victim to any sexual contact. *People in Interest of J.O.*, 2022 COA 65M, ¶ 17; *see also Page v. People*, 2017 CO 88, ¶¶ 18-19 ("The unlawful sexual contact statute expressly requires that the defendant act with a sexual purpose . . . ."). Moreover, "[a]lthough the prosecution is entitled to the benefit of every reasonable inference that may fairly be drawn from the evidence, 'there must be a logical and convincing connection between the facts established and the conclusion inferred.'" *J.O.*, ¶ 34 (quoting *Clark v. People*, 232 P.3d 1287, 1292 (Colo. 2010)).

## C. Analysis

¶ 33 Relying on *J.O.*, B.D.R. argues that his conduct alone does not show that he engaged in it for the purpose of sexual arousal, gratification, or abuse. In *J.O.*, eleven-year-old J.O. was accused of slapping M.L.'s breast, above her clothing, with the back of his hand. *Id.* at ¶ 4. The prosecution presented the following additional evidence:

- A teacher noticed that M.L. and J.O. were chasing each other and laughing, but then M.O. looked "visibly upset" and yelled at J.O. to stop and leave her alone. After J.O. left, M.L. told the teacher that J.O. had "touched her sexually" and said "sexual things." *Id.* at ¶ 5.

- Three days later, during a forensic interview, M.L. said that J.O. "move[d] his hands" all over her body, that J.O. touched her genitals with his "butt or something," that J.O. touched her genitals with his hand, that his "front private" touched her butt, and that "his butt touched [her] butt" as he was "spinning around her." *Id.* at ¶ 6.

The juvenile court found that

> there was contact, that it was unlawfully and
> knowingly done . . . [a]nd . . . that it was for
> the purpose of sexual gratification. The Court
> notes the touching was not pulling her hair,
> touching her head, twisting an arm. It was
> contact in sexual parts of [M.L.]'s body. Her
> breast, her genital area, and her butt.

*Id.* at ¶ 9.

¶ 34　A division of this court concluded that the evidence presented at trial was insufficient to prove beyond a reasonable doubt that

18

J.O. acted with the statutorily required sexual purpose. *Id.* at ¶ 11. More specifically, the division noted that

> [w]hether a juvenile acted for the purpose of sexual gratification must be determined on a case-by-case basis. The trier of fact must consider all the relevant circumstances, including the juvenile's age and maturity, before it can infer the requisite intent. It may not — and often will not — be appropriate for a fact finder to ascribe the same intent to a juvenile's act that one could reasonably ascribe to the same act if performed by an adult.

*Id.* at ¶ 28.

¶ 35    The division found that a juvenile's sexual purpose may not be inferred solely from the act of touching and that there must be other evidence of the juvenile's sexual purpose beyond the sexual contact itself. *Id.* at ¶ 18. Further, the division provided a nonexhaustive list of "other evidence" that might establish that the juvenile acted for the purpose of sexual gratification, which included "removing clothing, heavy breathing, placing the victim's hand on the accused's genitals, an erection, other observable signs of arousal, the relationship of the parties, sexually explicit comments, coercing or deceiving the victim to obtain cooperation,

19

attempting to avoid detection, or instructing the victim not to disclose the occurrence." *Id.* at ¶ 29.

¶ 36    The People argue that the following evidence, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that B.D.R. acted with a sexual purpose:

- At fourteen years old, B.D.R. was a teenager and not a young child.

- B.D.R. "did more than simply touch I.R.'s intimate parts. . . . [He] forcefully pulled I.R.'s head into his crotch and then forced I.R. to simulate oral sex."

¶ 37    Reviewing the record de novo, we are not persuaded that B.D.R.'s conduct of forcing I.R.'s head up and down over his crotch alone constitutes the "something more" required to prove it was for the purpose of sexual arousal, gratification, or abuse. I.R. testified that he knew who B.D.R. was, but he could not identify him in court; did not remember the incident, including anything B.D.R. said; and did not remember having any sort of relationship with B.D.R. Further, the video footage did not show any observable signs of B.D.R.'s arousal, did not show any observable signs of

coercion, and showed that the conduct occurred in the presence of other juveniles, so there was no attempt to avoid detection.

¶ 38    Additionally, to establish sexual abuse, the prosecution must show that the sexual contact was for the "purpose of causing sexual humiliation, sexual degradation, or other physical or emotional discomfort of a sexual nature." *People v. Espinosa*, 2020 COA 63, ¶ 21.  But the video footage did not show that I.R. left the room immediately after the contact as if humiliated or degraded by it, nor did I.R. describe such.  Under these circumstances, we conclude there was no other evidence of B.D.R.'s sexual purpose beyond the sexual contact itself.

¶ 39    We are not persuaded otherwise by the People's argument that *J.O.* is distinguishable because B.D.R. was fourteen at the time of the offense.  As previously described, *J.O.* instructs that whether a juvenile acted for the purpose of sexual gratification must be determined on a case-by-case basis considering all the relevant circumstances including the juvenile's age and maturity.  *J.O.*, ¶ 28.  Other than the video footage, the record contains no information on B.D.R.'s maturity.  Therefore, we cannot ascribe the

same intent to B.D.R.'s conduct that we could reasonably ascribe to the same act if it was performed by an adult. *See id.* at ¶ 35.

¶ 40 Accordingly, even when viewed in the light most favorable to the prosecution, the evidence is not substantial and sufficient to support a conclusion by a reasonable fact finder that B.D.R. acted for the purpose of sexual arousal, gratification, or abuse. We therefore discern no error in the juvenile magistrate's judgment of acquittal.

## IV. Disposition

¶ 41 The district court's ruling is disapproved.

JUDGE BROWN and JUDGE SCHUTZ concur.